THE FIRST SOCIETY OF THE METHODIST EPISCOPAL CHURCH IN IRVING, RESPONDENT, *v.* STEPHEN BROW-NELL, APPELLANT.

*Religious society — when may reincorporate under* § 16 *of chapter* 60 *of Revised Laws of* 1813 — *Identity of the new with the former body corporate — how determined.*

Under section 16 of chapter 60 of Revised Laws of 1813, providing for the reincorporation of the religious society of any religious corporation which has been dissolved by means of any non-user, or neglect to exercise any of the powers necessary for its preservation, a formal dissolution is not necessary; but such reincorporation may be had when the old corporation has become practically dissolved by a neglect to elect trustees.

When upon such reincorporation the name of the corporation is changed, its identity is not thereby necessarily affected. The question of identity is one of intention.

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action by the court without a jury.

The court found, among other things, that the defendant was in the possession of the lands in question ; the same being annually cultivated and inclosed with other lands owned by the defendant, which he also cultivated and occupied. That neither the plaintiff, nor its grantors had been in possession, or enjoyed any rents or profits, within twenty years preceding the commencement of this

action.   That in June, 1838, a religious corporation was created by filing a certificate in the Chautauqua county clerk's office, as required by section 3 of the General Act of 1813.   (R. L., chap. 60.)   The certificate named six persons as the first trustees, and divided them into three classes.

The corporate name given in the certificate was, " The First Society of the Methodist Episcopal Church in La Grange."

Afterward, and on the twenty-fifth of the same month, one McGregor conveyed the lands in question to the said trustees, naming each and every one of them, and describing them as " Trustees of the First Methodist Episcopal Church of the village of LaGrange, Chautauqua county, New York, and their successors ; " following the granting clause in the deed, the party of the second part was described as follows : " And to their successors, heirs and assigns, forever, in trust for the First Methodist Episcopal Church of the village of La Grange."   This deed, being duly acknowledged, was recorded in October, 1850.

That in 1851 a certificate, in form complying with the said third section, was filed in Chautauqua county clerk's office, naming seven persons as trustees, and giving the name of the corporation as " The First Society of the Methodist Episcopal Church in Irving," which is the corporate name of the plaintiff as used in this suit.

That the evidence established the fact that the place or neighborhood where this land is situated, was commonly called La Grange, when the society was organized and the deed executed, in 1838. That at that time another village or neighborhood, near by, was called Irving, and in 1851 the place first named was also commonly called Irving.

That in 1838, the members of the society organized in that year, erected a church building on lands other than those described in the complaint, but on the same street, and within a few feet thereof. That from 1838 to 1851, public and divine worship was held in the said building.   That the persons who held the meeting, and made and signed the certificate in 1851, were the same body and society of persons who at that time attended and worshiped in said church, and were the same body and society of persons who had so worshiped in said church from 1838 to the making of the certificate in 1851. That in the year 1851, the members of the society accustomed to

assemble and worship in the said church, had decreased in numbers, and had been negligent in selecting trustees. On their own motion they held the meeting, elected the trustees, and took the corporate name mentioned in the certificate of 1851. That the defense of an adverse possession in the defendant and his grantors, was not maintained. That the entity and identity of the corporation formed in 1838, were preserved; the members of the corporation reorganized in 1851, by virtue of section 16, of the act of 1813, deeming the society dissolved by reason of non-user and neglect to exercise powers necessary to its legal existence.

The counsel for the defendant claimed that the plaintiff was not the grantee named in the conveyance above referred to ; and further, that the reorganization was attempted in pursuance of section 13, and, not being within six years after defect of organization, that the power of resuscitation was gone.

*Julius A. Parsons,* for the appellant.

*F. S. Edwards,* for the respondent.

GILBERT, J. :

The defendant has shown no interest whatever in the lot in controversy, and his claim to hold it by virtue of an adverse possession thereof for more than twenty years, is, we think, unfounded. The conveyance to Newton, the defendant's grantor, expressly excepted this lot from the premises granted, and declared that the same belonged to the Methodist church ; and the conveyance to the defendant contained an exception, in the same words, of a lot belonging to the Methodist church ; describing the lot, however, as running back from the street sixteen, instead of sixty-two feet, as in the deed to Newton, his grantor. The latter deed, however, was on record when the defendant took his conveyance, and the record operated as full notice to the defendant of the exception contained in it. Newton also disclaimed any interest in this lot when he sold the adjoining land to the defendant, and pointed the lot out as belonging to the church. It is apparent, therefore, that Newton did not enter upon the lot under a claim of title thereto, and that his possession was not adverse, but that the plaintiff is

entitled to the legal presumption that such possession was under and in subordination to the legal title.   (Code, §§ 81, 82; *Rosseel* v. *Wickham*, 36 Barb., 386.)   It does not appear that the defendant entered under any claim of title to the lot in question; on the contrary, the evidence rather tends to repel any inference of such a claim.   But it is immaterial whether his entry was in hostility to the legal title or not, for his possession began in 1867, and was not continued for a sufficient length of time to bar the right of entry of the plaintiff.

We are of opinion that the plaintiff's title was clearly established.   It is not susceptible of dispute, nor is it disputed, that the fee of the lot in controversy vested in the corporation which was formed in 1838.   The only question is, whether the plaintiff has succeeded to that title.   The evidence precludes all doubt that the body, or society, incorporated in 1851, is the same as that incorporated in 1838; and that fact is found by the judge below.   The proceedings in 1851 to reincorporate the society, are expressly authorized by the sixteenth section of the "Act to provide for the incorporation of religious societies," passed April 5, 1813 (3 Edm. Stat., 695), which provides that "whenever any religious corporation shall be dissolved by means of any *non-user, or neglect to exercise any of the powers necessary for its preservation,* it shall be lawful for the religious society which was connected with such corporation, to reincorporate itself in the mode prescribed by this act, and that thereupon all the real and personal property which did belong to such dissolved corporation at the time of its dissolution, shall vest in such new corporation, for the said society."   This statute completely covers the case.   The old corporation had become practically dissolved by means of a neglect on the part of its members to elect trustees.   It was so regarded by those who were members of the society at the time it was reincorporated; and a revival of its corporate existence was all that was intended by that proceeding.   The statute does not require a formal dissolution as a condition to the right to reincorporate, but specifies a neglect to exercise *any* of the corporate powers necessary for its preservation, as in fact a dissolution, upon the happening of which the corporation might be revived.   The change of name does not necessarily affect the identity of the corporation.   In *Colchester*

*Cor.* v. *Seaber* (3 Burr., 1866) WILMOT, J., laid down the rule, that whenever a corporation accepts a new charter, it *remains*, to every intent and purpose, as it did before, *though* the name be altered ; and he cites *Haddock's Case* (Sir T. Raym.) as in point on this head. In this case it is found, as a fact, that the society which became incorporated in 1851, was the same society which was incorporated in 1838. The latter was therefore superseded by the former. It is also found as a fact, that the name of the place where the church is located had been changed from Lagrange to Irving. It was to conform to this alteration, evidently, that the change of the corporate name was made. The question of identity, says STORY, J. — that is, whether the new act creates a new body politic or corporate, or merely revives an old one — is one of intention. (*Bellows* v. *Hallowell and Augusta Bank*, 2 Mason, 43.) The intention in this case is unequivocally manifested ; and we have found nothing in the record to support the monstrous doctrine that the religious society before us has lost the title to its property by a change of its corporate name. By the express provisions of the statute cited, upon the incorporation of the society, in 1851, the lot in question vested in the new corporation.

The judgment must, therefore, be affirmed, with costs.

Present — SMITH, P. J., GILBERT and MERWIN, JJ.

Judgment affirmed.